UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

FLOYD MCMURRAY,

        Plaintiff,               Case No. 1:20-cv-847

v.                                     Honorable Paul L. Maloney

UNKNOWN DUNNIGAN et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Burke, Miller, and Hilding.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County,

Michigan. The events about which he complains occurred at that facility and the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. Plaintiff sues Assistant Deputy Warden Unknown Dunnigan, Captain Unknown Martin, Assistant Deputy Warden Unknown King, Unknown Party named as Jane Doe, Prisoner Counselor Unknown Wixson, Sergeant Unknown Breedlove, Corrections Officer Unknown Rockwell, Warden G. Skipper, Nurse Unknown Silvernail, Nurse Practitioner Unknown Hilding,[1] Hearings Officer Susan Burke, and Hearings Investigator Unknown Miller.

Plaintiff alleges that on February 1, 2020, he was assaulted in front of the dining hall at the Michigan Reformatory (RMI) during level-four dinner time and that Unknown Henderson (not a Defendant) let Plaintiff's property be stolen. After the assault, Plaintiff was released to the general population along with the individual who had assaulted him. Plaintiff states that he was not interviewed about the incident and, on February 2, 2020, he was again assaulted by two different gang members while in the big yard. On February 5, 2020, Plaintiff was heard on a misconduct ticket for fighting. During the hearing, Plaintiff told Defendant Hearings Officer Burke and Defendant Hearings Investigator Defendant Miller that he believed that gang members had placed a "hit" on him.

On February 6, 2020, Plaintiff was again released to the general population by Defendant SCC members Dunnigan, Martin, King, and Jane Doe. Plaintiff informed Defendant Dunnigan that a prison gang known as the Bloods had placed a "hit" on him for refusing their extortion demands. Plaintiff states that he should have been placed in protective custody or transferred to another prison. However, Defendants Dunnigan, Martin, King, and Jane Doe

---

[1] Plaintiff refers to Hilding as "Halabit" and "Halbit" in the body of the complaint.

disregarded the risk to Plaintiff's safety. Plaintiff also states that Defendant Wixson worked in segregation and was aware of the "hit," but refused to place Plaintiff in protective custody.

Plaintiff was released to cell I4 86 on February 9, 2020, and was immediately approached by two gang members, who told Plaintiff to "lock up or get stabbed the fuck off the yard." (ECF No. 1, PageID.8.) Plaintiff told Corrections Officer Frost (not a Defendant) about the threat and requested protective custody. Corrections Officer Frost told Sergeant Perez (not a Defendant, and Plaintiff was taken to protective custody.

On February 15, 2020, Defendants Rockwell and Breedlove told Plaintiff that if he did not leave protective custody immediately, he would receive a major misconduct for disobeying a direct order. Plaintiff asserts that this was a common practice at RMI to free up cell space in temporary segregation due to overcrowding. Plaintiff states that Defendants Rockwell and Breedlove were aware of the hit, but they disregarded the risk to Plaintiff and forced him to return to the general population. Plaintiff states that Defendant Warden Skipper was responsible for the unwritten policy and practice of pushing prisoners out of protective custody in disregard of their safety.

On February 16, 2020, Plaintiff was viciously beaten by two different gang members in the big yard. After the assault, Plaintiff was placed in segregation. On March 4, 2020, Plaintiff was transferred to the Carson City Correctional Facility (DRF) and was told that he would be seen by health care for his dizziness, forgetfulness, and passing out. However, Plaintiff was not seen by health care for more than two months.

Plaintiff sent kites to health care about his injuries on March 7, March 21, and April 13, and May 7 of 2020. On May 20, 2020, Plaintiff lost consciousness and hit his head. Plaintiff was taken by wheelchair to health care and was seen by Defendant Silvernail, who noted a huge

3

knot on Plaintiff's head from the fall, as well as the fact that Plaintiff had been complaining about dizziness, passing out, and headaches. Defendant Silvernail also noted that Plaintiff had high blood pressure. Defendant Silvernail refused to let Plaintiff see the doctor, stating that nothing was wrong and that Plaintiff should drink water.

On May 21, 2020, Plaintiff began seeking mental health treatment. On May 22, 2020, Plaintiff sent another health care kite regarding his injuries. Plaintiff was finally seen by a doctor on May 24, 2020, who diagnosed Plaintiff with a concussion. Plaintiff states that he continues to suffer from headaches and must take at least ten aspirin and Tylenol to be able to get out of bed. On June 10, 2020, Plaintiff was prescribed prednisone by Defendant Nurse Practitioner Hilding. Plaintiff claims that the prednisone caused him to suffer from extreme headaches. Plaintiff also experienced bouts of dizziness and forgetfulness. Plaintiff sent kites about his increased headaches and other symptoms on June 11 and June 17, 2020.

Plaintiff claims that Defendants violated his rights under the Eighth Amendment. Plaintiff seeks damages.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Eighth Amendment

Plaintiff states that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal

civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766-67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable

measures to guarantee the safety of the inmates" in their care. *Hudson*, 468 U.S. at 526-27. To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

In this case, Plaintiff alleges sufficient facts to show that Defendants Dunnigan, Martin, King, Jane Doe, Wixson, Breedlove, and Rockwell were deliberately indifferent to a serious risk of harm to Plaintiff when they refused to keep him in protective custody. In the case of Defendant Skipper, Plaintiff alleges that he is responsible for the unwritten policy which moves at risk prisoners, such as Plaintiff, without regard to the risk that they will be assaulted in the general population. Therefore, the Court will not dismiss Plaintiff's Eighth Amendment claims against Defendants Dunnigan, Martin, King, Jane Doe, Wixson, Breedlove, Rockwell, and Skipper.

With regard to Defendants Burke and Miller, the Court notes that they were employed as a hearings officer and a hearings investigator. There is no indication that either of these Defendants had any involvement with Plaintiff's placement in the prison or the decision to deny Plaintiff protective custody. The mere fact that Plaintiff informed them, during a hearing on a major misconduct charge for fighting, of the existence of a possible "hit" on him is insufficient to show that they acted with deliberate indifference. Under the circumstances, the facts alleged

fall short of demonstrating a plausible Eighth Amendment claim against Defendants Burke and Miller. Therefore, the Court will dismiss them from this action.

Plaintiff claims that Defendants Silvernail and Hilding violated his Eighth Amendment rights by denying him adequate medical care. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

In the context of a medical claim, to satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Farmer*, 511 U.S. at 834. In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cty.*, 534 F.3d 531, 540 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Cty. Of Saginaw*, 749 F.3d 437, 466, 451 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical

need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward*

9

*v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).  "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"  *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).  He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

In this case, Plaintiff alleges that Defendant Hilding prescribed prednisone to address his symptoms, but that the drug caused Plaintiff to suffer from severe headaches. However, as noted above, a disagreement over a prescribed treatment is insufficient to support a

claim of deliberate indifference. Therefore, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Hilding.

With regard to Defendant Silvernail, Plaintiff alleges that, after he lost consciousness, fell and hit his head, he was taken to health care by wheelchair on May 20, 2020. Defendant Silvernail saw Plaintiff and noted that he had a huge knot his head from falling, was suffering from dizziness, passing out, and headaches, and had high blood pressure. Defendant Silvernail nevertheless disregarded Plaintiff's symptoms and refused to let Plaintiff see the doctor, stating that nothing was wrong and that Plaintiff should drink water. Plaintiff was later diagnosed as having a concussion. The Court concludes that Plaintiff has stated sufficient facts to support a claim of deliberate indifference against Defendant Silvernail. Therefore, the Court will not dismiss this claim on initial screening.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Burke, Miller, and Hilding will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claims against Defendants Dunnigan, Martin, King, Jane Doe, Wixson, Breedlove, Rockwell, Skipper, and Silvernail remain in the case.

An order consistent with this opinion will be entered.


Dated:   September 16, 2020                       /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  United States District Judge