UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLOYD McMURRAY #585347,

        Plaintiff,                                  Hon. Paul R. Maloney

v.                                                   Case No. 1:20-cv-847

UNKNOWN DUNNIGAN, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 13) based on Plaintiff's failure to exhaust his administrative remedies. The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED**.

**BACKGROUND**

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at Carson City Correctional Facility (DRF), has sued several MDOC employees based on events that occurred at DRF and at his prior facility, the Michigan Reformatory (RMI), in Ionia, Michigan. Plaintiff alleges that on February 1, 2020, he was assaulted in front of the dining hall at RMI during level-four dinner time. After the assault, Plaintiff was released to the general population along with the individual who assaulted him. Plaintiff claims that he was not interviewed about the incident and was assaulted again on February 2, 2020, by two different gang members. (ECF No. 1 at PageID.6.) On February 5, 2020, Plaintiff was heard on a misconduct ticket for fighting. During the hearing, Plaintiff told dismissed Defendants Burke and Miller that

1

he believed that gang members had placed a "hit" on him for refusing their extortion demands. (*Id.*)

On February 6, 2020, Plaintiff was again released to the general population by Defendant Security Classification Committee (SCC) members Dunnigan, Martin, King, and Jane Doe. Plaintiff informed Defendant Dunnigan that the Bloods had placed a "hit" on him for refusing their extortion demands. Plaintiff alleges that he should have been placed in protective custody or transferred to another prison, but Defendants Dunnigan, Martin, King, and Jane Doe disregarded the risk. Plaintiff also alleges that Defendant Wixson, who worked in segregation, was aware of the "hit" and ignored the risk. (*Id.* at PageID.6–7.)

Plaintiff was released to cell I4 86 on February 9, 2020, and was immediately approached by two gang members who told Plaintiff to "lock up or get stabbed the fuck off the yard." Plaintiff claims that he told non-Defendant Corrections Officer Frost about the threat and requested protective custody. Frost told non-Defendant Sergeant Perez about Plaintiff's concern, and Plaintiff was taken to protective custody. (*Id.* at PageID.7–8.) On February 15, 2020, Defendants Rockwell and Breedlove told Plaintiff that if he did not leave protective custody immediately, he would receive major misconduct tickets for disobeying a direct order. On February 16, 2020, Plaintiff was viciously beaten by two different gang members in the big yard. After the assault, Plaintiff was placed in segregation. Defendant Skipper was aware of systematic deficiencies at RMI and had a policy to release prisoners from protective custody due to overcrowding. (*Id.* at PageID.8–9.)

On March 3, 2020, Plaintiff was transferred to DRF and complained about the assaults at RMI but was never seen by healthcare personnel. On May 20, 2020, Plaintiff lost consciousness and hit his head. Plaintiff was taken by wheelchair to healthcare, where he was seen by Defendant

2

Silvernail, who noted a huge knot on Plaintiff's head. Defendant Silvernail also noted that Plaintiff had been complaining about dizziness, passing out, and headaches and that he had high blood pressure. Defendant Silvernail refused to let Plaintiff see the doctor, stating that there was nothing wrong with him and that he should drink water. On May 22, 2020, Plaintiff sent another healthcare kite regarding his injuries. He was finally seen by a doctor on May 24, 2020, who diagnosed him with a concussion. (*Id.* at PageID.9–10.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting

3

*Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (effective 03/18/2019). If this attempt is

unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motion, Defendants attach a Step III Grievance Report showing grievances that Plaintiff exhausted through Step III during the relevant time period. (ECF No. 14-3.) Defendants argues that Plaintiff pursued two grievances through Step III pertaining to his remaining claims. Defendants contends that, because both grievances were rejected on procedural grounds, neither grievance was properly exhausted.

I.      **Grievance DRF-20-03-0337-28b (337 Grievance)**

Plaintiff filed the 337 Grievance on February 26, 2020. This grievance relates to Plaintiff's failure-to-protect claim. In describing what he did to resolve the issue, Plaintiff stated that he "told staff and even ask[ed] for protective custody on 2-10-22." (ECF No. 14-3 at PageID.118.) In the description of the problem, Plaintiff stated that "MDOC" failed to protect him and forced him into a hostile/violent environment. He said that he was assaulted on February 1, 2020, then forced out of segregation and into the general population on February 2, 2020, and attacked again. Plaintiff

5

said that he was forced out of protective custody again and immediately threatened, after which he requested to be placed in protective custody. However, he was forced back out into the general population on February 15, 2020, by staff who threatened him with a misconduct, and was savagely beaten the following day. (*Id.*) Plaintiff's grievance was rejected on March 2, 2020 because it was "[u]nclear what staff are involved in the issue." (*Id.* at PageID.119.) Plaintiff wrote some of Defendants' names on the rejection letter (Dunnigan, Wixson, Rockwell, and Breedlove) and returned it to the grievance coordinator. (ECF No. 21-1 at PageID.148.)[1]

Plaintiff filed a Step II appeal of the 337 Grievance on March 30, 2020, in which he identified Defendants Rockwell and Breedlove. (ECF No. 14-3 at PageID.116.) On April 9, 2020, the grievance coordinator sent Plaintiff a letter stating that the time for a response to his Step II appeal would be extended to May 21, 2020. (ECF No. 24-1 at PageID.171.) The Step II response, issued on April 21, 2020, upheld the Step I rejection. (ECF No. 14-3 at PageID.117.) The rejection was upheld at Step III. (*Id.* at PageID.115.)

Defendants contend that Plaintiff failed to properly exhaust his failure-to-protect claim because the 337 Grievance, which raised the issue, was rejected at Step I as vague, and the rejection was upheld through Step III.

In order to properly exhaust under the MDOC's grievance procedure, a prisoner generally must specify in his grievance the names of the individuals involved in the matter. *Mattox v. Edelman*, 851 F.3d 583, 590–91 (6th Cir. 2017) (citing *Reed–Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State

---

[1] In addition, on March 2, 2020, Plaintiff filed a new grievance, DRF-20-03-0579-28e (579 Grievance), which indicated that Plaintiff informed the SCC and staff about the "hit." (ECF No. 21-1 at PageID.150.) That grievance was rejected as untimely at all three steps. (ECF No. 14-3 at PageID.100.)

provides—by, say, identifying all relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation in the process.")).

A failure to name the individual or all of the individuals involved in the incident is not necessarily fatal to a prisoner's suit, so long as the grievance provides prison officials adequate notice of the claim against the defendant to allow them to resolve the issue. *See Calhoun v. Hill*, No. 07-11613, 2008 WL 4277171, at *3 (E.D. Mich. Sept. 17, 2008) (stating that a "Court may excuse a prisoner's failure to identify by name a particular defendant in a grievance when it is obvious from the facts alleged in the grievance that the defendant was involved"). Similarly, "an inmate need not identify each officer by name when the identities of the particular officers are unknown." *Thomas v. Woolum*, 337 F.3d 720, (6th Cir. 2003), *abrogated on other grounds by Woodford v. Ngo*, 548 U.S. 81 (2006). A grievance serves to alert prison officials to a problem, not to provide notice to a particular prison official that he or she may be sued. *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004).

> But, at the same time, the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem.

*Id.*

Plaintiff contends that he properly exhausted his claims because, after the grievance coordinator sent him the Step I rejection, he provided the grievance coordinator all of the names, thereby allowing her to perform a proper investigation. He further notes that the grievance coordinator granted an extension of time to investigate the grievance. But the extension itself is not material, as the Step I rejection was ultimately upheld at Step II, even though Plaintiff had

provided additional information to the grievance coordinator through his Step II appeal (mentioning Defendants Rockwell and Breedlove) and through his response to the Step I rejection letter (mentioning Defendants Dunnigan, Wixson, Rockwell, and Breedlove). Similarly, the 579 Grievance could not have properly exhausted the claim, as it was rejected as untimely at Step I and the rejection was upheld at Steps II and III.

Whether Plaintiff properly exhausted his failure-to-protect claims turns on whether he provided enough information in his Step I grievance about the officials involved in the incidents described therein to allow prison officials "a fair opportunity" to address the issue in his grievance on the merits and develop an administrative record for any dispute that might end up in court. *Reed-Bey*, 603 F.3d at 324. In *Reed-Bey*, the plaintiff failed to comply with the MDOC's grievance procedure by naming all of the defendants in his Step I grievance, but prison officials addressed the grievance on the merits. The Sixth Circuit held that, because the MDOC failed to enforce its own procedural rules, it would not do so either. *Id.* at 325 ("[T]he State's decision to review a claim on the merits gives us a warrant to do so as well, even when a procedural default might otherwise have resolved the claim."). In contrast to *Reed-Bey*, prison officials here rejected the 337 Grievance on procedural grounds and did not reach the merits, so Defendants may assert the procedural default. Where a prisoner fails to identify a prison official by name, his grievance can still fulfill the purposes of exhaustion by the inclusion of other information identifying the official, such as the official's title or position or even the facts set forth in the grievance. *Cary v. Washington*, No. 17-13217, 2018 WL 5117812, at *8 (E.D. Mich. July 31, 2018), *report and recommendation adopted*, No. 17-CV-13217, 2018 WL 4501480 (E.D. Mich. Sept. 20, 2018) (collecting cases); *see also Christian v. Michigan Dep't of Corrs.-Health Servs.*, No. 12-12936, 2013 WL 5348832, at *4–5 (E.D. Mich. Sept. 24, 2013) (concluding that the plaintiff's general

reference to "health services" in combination with specific recitations of the dates and subjects of health care kites sent to providers sufficed to identify them as "the target of the grievance"); *Harrington v. Smolinski*, No. 1:05-CV-688, 2006 WL 549383, at *3 (W.D. Mich. Mar. 6, 2006) ("Although Plaintiff did not mention Defendant Smolinski by name, he sufficiently identified her by the title of 'Classification Director.'").

In the 337 Grievance, Plaintiff essentially complained about three incidents: (1) being forced out of segregation on February 2, 2020; (2) being forced out of segregation again at some point between February 2, 2020, and February 10, 2020; and (3) being forced out of segregation on February 15, 2020. (ECF No. 14-3 at PageID.118.) For the first two incidents, Plaintiff did not mention any individual, and for the last incident, Plaintiff only indicated that it was by "staff threatening [Plaintiff] with writing a misconduct." (*Id.*) Plaintiff did not refer to any prison official by name or title, and the identities of the defendants would not necessarily be obvious from the facts he alleges in the grievance. Moreover, although Plaintiff mentions in his response that he told staff about the "hit" out on him and that Defendants Dunnigan, King, Wixson, Jane Doe, and Martin were the only staff to interview him about the February 2, 2020 attack (ECF No. 21 at PageID.142), Plaintiff did not mention these facts in his grievance. Similarly, Plaintiff did not indicate that Defendants Rockwell and Breedlove were the only staff with whom he had contact on February 15, 2020. Therefore, Plaintiff failed to provide sufficient information to allow the respondent to identify the individuals involved in the issues raised in the grievance. Therefore, prison officials properly enforced the procedural rule.

Accordingly, I recommend that the Court conclude that Plaintiff failed to exhaust his failure-to-protect claim against Defendants Dunnigan, Martin, King, Wixson, Jane Doe, Breedlove, Rockwell, and Skipper.

**II.    Grievance DRF-20-05-1328-28I (1328 Grievance)**

The 1328 Grievance pertains to Plaintiff's claim against Defendant Silvernail for failing to treat Plaintiff on May 20, 2020, and refusing to allow him to see a doctor. (ECF No. 14-3 at PageID.114.) Plaintiff filed the grievance on May 21, 2020, and it was rejected on June 8, 2020, for failing to attempt to resolve the issue with staff prior to filing the grievance. (*Id.*) The rejection was upheld through Step III of the process. (*Id.* at PageID.111, 113.)

Plaintiff indicated in his Step I grievance that he attempted to resolve the issue prior to submitting the grievance by "sen[ding] several kites to healthcare." He stated that he did this on May 13, 2020—six days prior to the incident. (*Id.* at PageID.114.) Although the respondent did not provide a detailed explanation for the rejection, it appears that the respondent concluded that Plaintiff had not attempted to resolve the incident *after* it occurred and before filing the grievance. In his response, Plaintiff contends that, in spite of the dates he included in his grievance, he did attempt to resolve the issue with Defendant Silvernail because he sent a healthcare kite on May 22, 2020, specifically referencing the May 20 encounter with Defendant Silvernail. (ECF No. 21 at PageID.143; ECF No. 21-1 at PageID.151.) However, Plaintiff did not mention the healthcare kite in his grievance or his Step II and III appeals. Moreover, he filed the grievance on May 21, but sent the kite on May 22. The grievance policy requires a prisoner to attempt to resolve the issue "[p]rior to submitting a written grievance." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q. Thus, Plaintiff's May 22, 2020 healthcare kite—sent after he filed the grievance—could not have demonstrated compliance with the grievance policy.

Accordingly, I recommend that the Court conclude that Plaintiff failed to exhaust his claim against Defendant Silvernail.

## CONCLUSION

For the foregoing reasons, I recommend that the Court **grant** Defendants' motion for summary judgment (ECF No. 13) based on Plaintiff's failure to exhaust his administrative remedies that Plaintiff's claims against all Defendants be **dismissed without prejudice**.

Dated: June 7, 2021                                          /s/ Sally J. Berens
                                                                                    SALLY J. BERENS
                                                                                    U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).