UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLOYD MCMURRAY #585347,

    Plaintiff,                                        Hon. Paul L. Maloney

v.                                                         Case No. 1:20-cv-847

UNKNOWN DUNNIGAN, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Now before me is Defendants Tony Breedlove and Thomas Rockwell's Motion for Summary Judgment. (ECF No. 46.) The matter is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED,** and that the complaint be **dismissed with prejudice**.

### I.  Background

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, filed a complaint pursuant to 42 U.S.C. § 1983 against several MDOC employees on September 2, 2020, alleging Eighth Amendment claims based on events that occurred while he was confined at the Carson City Correctional Facility and the Michigan Reformatory (RMI). Following initial review pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A and 42 U.S.C. § 1997e(c), as well dismissal of certain claims based on failure to exhaust administrative remedies as required by the Prison Litigation Reform Act (ECF Nos. 5, 37), Plaintiff's remaining claims are his failure-to-protect claims against Defendants Tony Breedlove and Thomas Rockwell.

Plaintiff alleges that on February 1, 2020, he was assaulted by an unknown individual in front of the dining hall at RMI during level-four dinner time. (ECF No. 1 at PageID.6.) On February 2, 2020, prison staff observed Plaintiff and prisoners Watkins and Fitts engaged in an altercation on the yard of J-Block. (ECF No. 47-2 at PageID.275, 278.) Plaintiff claims he was assaulted in this incident. (ECF No. 1 at PageID.6.) Nonetheless, all three prisoners were issued Class I misconduct tickets for "fighting." (*Id.*) On February 5, 2020, a hearing was held on Plaintiff's misconduct ticket. Plaintiff asserted that he was not fighting, but instead was defending himself. (*Id.* at PageID.275, 280.) After reviewing the video, the hearing officer concluded otherwise and found Plaintiff guilty of "fighting." Plaintiff was therefore sentenced to ten days of detention, starting February 5, 2020, and ending February 15, 2020. (*Id.*)

In spite of the sentence to segregation, Plaintiff claims that he was released into the general population the next day, February 6, 2020, by the Security Classification Committee (SCC) (previously dismissed Defendants).[1] He claims that he informed SCC member Dunnigan that a gang known as the Bloods had a "hit" out on him and that other SCC members knew about the "hit." (ECF No. 1 at PageID.6–7.) Plaintiff alleges that he was released into the general population on February 9, 2020 to cell I4 86, and that immediately after his release, two known "gangbangers" told him to "lock up or get the fuck off the yard." Plaintiff immediately told CO Frost that he needed protective custody because he feared for his life. Thereafter, CO Frost and Sgt. Perez took Plaintiff to protective custody. (*Id.* at PageID.6–8.)

Plaintiff alleges that on February 15, 2020, Defendants Rockwell and Breedlove told him that if he did not leave protective custody immediately, he would receive major misconduct tickets

---

[1] It appears that Plaintiff means that his release into the general population was *authorized* on February 6, 2020. (ECF No. 1 at PageID.6; ECF No. 1-1.)

for disobeying a direct order. The next day, he was assaulted by two "gang bangers" on the "big yard." *Id.* Following the assault, MDOC staff submitted a Request for Protection/Investigation Report and placed Plaintiff in protective custody. (ECF No. 47-2 at PageID.275, 282.) On February 18, 2020, Plaintiff submitted a request for protection. (*Id.* at PageID.284.) On February 24, 2020, the SCC approved Plaintiff's transfer to an alternate level IV facility. (*Id.* at PageID.282.) On March 3, 2020, Plaintiff was transferred to DRF. (*Id.* at PageID.282.)

According to Defendants, Plaintiff was not in protective custody on February 15, 2020, when they released him into the general population. Rather, they assert that he was still in disciplinary segregation completing his ten-day disciplinary sentence for fighting. (ECF No. 47-4 at PageID.299–300; ECF No. 47-5 at PageID.302–03.) Both Defendants deny any knowledge about an alleged "hit" on Plaintiff or having received any information from anyone else that Plaintiff needed protection or was in danger on February 15. Both Defendants assert that they believed that he had been placed in segregation for disciplinary purposes. (ECF No. 47-4 at PageID.300; ECF No. 47-5 at PageID.303.)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th

Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. Discussion

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. However, "[a]lthough 'prison officials have a duty [under the Eighth Amendment] to protect prisoners from violence at the hands of other prisoners,' it is equally clear that not 'every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials.'" *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021) (citations and internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 833–34).

In order to state a failure-to-protect claim, a plaintiff must demonstrate (1) that he "objectively" was "incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, and (2) that the official acted with "deliberate indifference" to inmate safety, "meaning the official was 'subjectively aware of the risk' and 'fail[ed] to take reasonable measures to abate it.'" *Reedy*, 988 F.3d at 912 (quoting *Farmer*, 511 U.S. at 829, 834, 847); *see also Greene v. Bowles*, 361 F.3d 290, 293–94 (6th Cir. 2004). In establishing the objective prong, although a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal-safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the

4

minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

As set forth above, Plaintiff contends that: (1) he was assaulted on February 1, 2020, by an unknown assailant; (2) he was assaulted again on February 2, 2020, by two gang members; (3) he was released back to general population housing on February 9 and immediately threatened by two gang members; (4) at his request, CO Frost and Sgt. Perez placed him into protective custody due to the gang threats; (5) on February 15, 2020, Defendants forced him out of protective custody and into the general population; and (6) he was beaten viciously by two gang members on February 16, 2020.

    A.    **Objective Component**

Defendants contend that Plaintiff's claim fails because there is no evidence of an objective risk of harm. They argue that there is no evidence that the alleged February 1, 2020 attack occurred, that it is undisputed that Plaintiff was found guilty of "fighting" in connection with the alleged February 2, 2020 assault, and that there is no evidence that Plaintiff was in protective custody on February 15, 2020, as the February 5, 2020 Misconduct Hearing Report shows that Plaintiff was in administrative segregation through February 15, 2020 on his sentence to segregation for the

5

"fighting" misconduct. (ECF No. 47 at PageID.261–62; ECF No. 59 at PageID.352–53.) But Plaintiff's own testimony based on his personal knowledge is sufficient to establish these facts. *See Branham v. Gannett Satellite Information Network, Inc.*, 619 F.3d 563, 573–74 (6th Cir. 2010) ("Because Branham's own testimony constitutes sufficient evidence to establish a genuine issue whether she suffered from a serious health condition that prevented her from doing her job, this case must be remanded for a jury to decide whether she was entitled to leave under the FMLA."); *Jacob v. Killian*, 437 F. App'x 460, 466 (6th Cir. 2011) (noting that the plaintiff's own testimony about the defendant's intrusions onto the plaintiff's property was "sufficient, without more, to defeat [the] defendant's motion for summary judgment") (citing *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 904 (6th Cir. 2006)). Plaintiff's testimony, alone, thus creates an issue of fact that he was attacked on February 1 and 2, 2020.[2]

More importantly, for purposes of the instant motion, his testimony suffices to create genuine issues of material fact as to whether he was released into the general population on February 9, whether CO Frost and Sgt. Perez thereafter placed him into protective custody, and whether he remained in protective custody on February 15, 2020, when Defendants allegedly forced him to leave segregation under threat of multiple misconducts. While the Misconduct Hearing Report shows that Plaintiff received a ten-day sentence to administrative segregation that was to end on February 15, it does not contradict Plaintiff's assertion (ECF No. 57 at PageID.343) that he was released early on February 9, and thereafter returned to segregation for placement in protective custody. For example, Defendants have not submitted a lock history to undermine Plaintiff's claim that he was released into the general population before the end of his sentence

---

[2] Defendants do not argue that the guilty finding following the misconduct hearing has preclusive effect as to the issue of whether Plaintiff was, in fact, attacked by the other prisoners.

and subsequently returned to segregation, nor have they offered evidence from CO Frost and/or Sgt. Perez disputing Plaintiff's claim that they placed him in administrative segregation. Accordingly, given Plaintiff's testimony that he was, in fact, in protective custody on February 15, 2020, a reasonable jury could conclude that Plaintiff faced a serious risk of harm on that date.

### B. Subjective Component

Although Plaintiff has presented sufficient evidence to establish the objective component of his claims, they fail on the subjective component—that Defendants were deliberately indifferent to a serious risk of harm. First, Plaintiff testified that he had no recollection of informing Defendants about the February 1 and 2, 2020 assaults. (ECF No. 47-3 at PageID.291.) Plaintiff's only basis for asserting Defendants' knowledge of those incidents was "[b]ecause they're COs in the hole," and "they know why people are in the hole." (ECF No. 47-3 at PageID.291.) Such testimony is insufficient to show that Defendants were subjectively aware of a risk of harm to Plaintiff. *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("In order to survive summary judgment, Plaintiff cannot rely on conjecture or conclusory accusations."); *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986) (noting that "[m]ere personal beliefs, conjecture and speculation are insufficient" to establish a genuine issue of material fact). Similarly, even if there was information "on the board" or "in the logbook" that Plaintiff was in protective custody (*id.*), as Plaintiff believed, this assertion alone is not enough to show that Defendants were actually aware of this information or of a risk to Plaintiff's safety. Plaintiff also testified that he "didn't tell [Defendant] Breedlove" anything about his need to stay in protective custody, and that Defendant Rockwell merely approached Plaintiff, apparently left while Plaintiff interacted with Defendant Breedlove, and "came back." (*Id.* at PageID.292–93.) Given this testimony, Plaintiff fails to show Defendants were aware of an excessive risk to Plaintiff's safety if he was returned to the general population and ignored that risk. As noted above, Plaintiff admitted that he did not

explain to either Defendant that he was in administrative segregation for protection from threats of harm, rather than for disciplinary purposes. Plaintiff's assumptions or speculation about what Defendants knew simply do not suffice as evidence to establish deliberate indifference.

In his response, Plaintiff asserts that violations of the MDOC Employee Handbook contributed to the constitutional violation. The alleged policy violations are insufficient to sustain Plaintiff's Eighth Amendment claim. First, Plaintiff does not allege that either Defendant committed a policy violation. (ECF No. 57 at PageID.339–40.) Furthermore, it is well established that violation of "an MDOC policy is wholly irrelevant to Plaintiff's constitutional claims, and in any event, a violation of an MDOC policy does not rise to the level of a constitutional violation asserted via § 1983." *Johnson v. Harter*, No. 2:20-cv-74, 2022 WL 3699512, at *2 (W.D. Mich. Aug. 26, 2022) (citing *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007)). Therefore, Plaintiff's argument that MDOC policy violations amount to a constitutional violation should be rejected.[3]

### IV. Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants' motion for summary judgment (ECF No. 46) and dismiss Plaintiff's complaint with prejudice.

I further recommend that an appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

Dated: October 25, 2022                               /s/ Sally J. Berens
                                                      SALLY J. BERENS
                                                      U.S. Magistrate Judge

---

[3] Defendants also raise the defense of qualified immunity. (ECF No. 47 at PageID.268–69.) In light of Plaintiff's failure to present sufficient evidence to create a triable issue of fact with regard to deliberate indifference, I find no need to address the qualified immunity argument.

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).